## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

BARBARA DIANE LATHAM, Individually
and as Personal Representative of
JAMES C. LATHAM, deceased,

       **Plaintiff,**

vs.                                                    No. 2:13-cv-00822 RB/SMV

NEAL COX, in his individual capacity;
BEN HAZEN, in his individual capacity;
LINCOLN COUNTY SHERIFF'S DEPARTMENT,
and the COUNTY OF LINCOLN,

       **Defendants,**

consolidated with,

BARBARA DIANE LATHAM, Individually
and as Personal Representative of
JAMES C. LATHAM, deceased,

       **Plaintiff,**

vs.                                                    No. 2:14-cv-00671 RB/SMV

KEVIN KENNEDY, in his individual capacity;
and the VILLAGE OF CAPITAN,

       **Defendants.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendants' Motion for Summary Judgment on

the Basis of Qualified Immunity and Other Grounds and Motion to Dismiss Plaintiff's First

Amended Complaint and/or Motion for Summary Judgment and for Qualified Immunity. (Docs.

38 and 75.)[1] Plaintiff opposes these motions. Jurisdiction arises under 28 U.S.C. §§ 1331. Having

reviewed the submissions and arguments of the parties, the Court **GRANTS** these motions.

---

[1] References are to the lead case (13-cv-0822) unless otherwise noted.

## I.      Background

On July 28, 2011, Lincoln County Sheriff Deputies Neal Cox and Ben Hazen shot and killed Plaintiff's husband, James Latham. On July 19, 2013, Plaintiff filed a Complaint for Violation of Civil Rights, Wrongful Death and Damages against Deputy Cox, Deputy Hazen, the Lincoln County Sheriff's Department, and the County of Lincoln in the Twelfth Judicial District Court of the State of New Mexico. Therein, Plaintiff alleged (1) wrongful death based on negligence; (2) claims under 42 U.S.C. § 1983 for violation of Mr. Latham's civil rights under the United States Constitution (Fourth, Fifth, Sixth, and Fourteenth Amendments) and the New Mexico Constitution, as well as failure to train and supervise; and (3) loss of spousal consortium and emotional distress. (Doc. 1-1.) On August 30, 2013, Defendants removed the matter to this Court. (Doc. 1.)

On July 25, 2014, Plaintiff filed suit, based in substantial part on her husband's death, against Capitan Police Officer Kevin Kennedy and the Village of Capitan in this Court. (Doc. 1 (14-cv-0671).) On July 28, 2014, Plaintiff filed a First Amended Complaint under §1983 alleging (1) unnecessary use of force in violation of the Fourth Amendment; (2) unlawful search and seizure and wrongful detention in violation of the Fourth Amendment; (3) violation of trial rights under the Sixth Amendment; (4) violation of due process rights under the Fifth Amendment; and (5) municipal liability. (Doc. 4 (14-cv-0671).) On September 29, 2014, the Court consolidated the actions. (Doc. 68.)

Defendants filed motions for summary judgment on all claims arguing that (1) the individual defendants are entitled to qualified immunity; (2) the municipal defendants are not subject to municipal liability; (3) failure to state a claim; (4) the Lincoln County Sheriff's Office and the County of Lincoln are improper parties; (5) the New Mexico Tort Claims Act does not

waive sovereign immunity for the state-law claims; and (6) the Family Violence Protection Family Act grants immunity for the state-law claims. (Docs. 38 and 75.) Plaintiff filed briefs in opposition to the motions. (Doc. 59 and Doc. 20 (14-cv-0671).) Defendants filed replies. (Doc. 76 and Doc. 28 (14-cv-0671).)

## II.    Standard

Summary judgment is appropriate only if "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it could influence the determination of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" if a reasonable trier of fact "could return a verdict for the nonmoving party." *Id*. At the summary judgment stage, the Court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial." *House v. Bell*, 547 U.S. 518. 559-60 (2006). In making that determination, a court must view the evidence "in the light most favorable to the opposing party." *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970) and *Anderson*, 477 U.S. at 255).

Additional considerations arise when analyzing a motion for summary judgment based on qualified immunity. The Court "still views the facts in the light most favorable to the non-moving party and resolves all factual disputes and reasonable inferences in his favor." *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014). "Unlike most affirmative defenses, however, the plaintiff would bear the ultimate burden of persuasion at trial to overcome qualified immunity by showing a violation of clearly established federal law." *Id.* "Thus, at summary judgment, the Court must grant qualified immunity unless the plaintiff can show (1) a reasonable jury could find facts supporting a violation of a constitutional right, which (2) was clearly established at the time of the

defendant's conduct." *Id*.

### III.   Statement of Facts

On July 28, 2011, at approximately 9:40 p.m., Capitan Police Officer Kevin Kennedy responded to a domestic disturbance call from Plaintiff in Capitan, New Mexico. (Defendant Exhibit 1, Affidavit of Kevin Kennedy, Doc. 75-1.) Plaintiff reported that she and her husband, James Latham, had an argument while they were driving. (Doc. 75-1; Plaintiff Exhibit A, Affidavit of Barbara Diane Latham, Doc. 49-1.) During the argument, Mr. Latham struck Plaintiff in the face. (Doc. 75-1.) Plaintiff got out the vehicle and walked to a friend's house. (*Id*.) Plaintiff reported that Mr. Latham was intoxicated, unpredictable, and a convicted sex offender who served time in prison. (*Id*.) According to Officer Kennedy, Plaintiff stated that Mr. Latham said he was going home to get a gun and he had access to guns in the home. (*Id*.) Plaintiff denies that she said that Mr. Latham possessed guns. (Doc. 49-1.) Rather, Plaintiff avers that she said there were guns at the home that belonged to her. (*Id*.) Plaintiff affirms that she never said that Mr. Latham said he was going to get a gun. (*Id*.) Officer Kennedy observed that Plaintiff had bruising near her eye, which was consistent with Plaintiff's report that Mr. Latham struck her in the face. (Doc. 75-1.)

Officer Kennedy requested backup and Lincoln County Sheriff's Deputy Neal Cox, Deputy Ben Hazen, and Sergeant Steven Minner arrived and met with Plaintiff and Officer Kennedy. (Defendant Exhibit A, Answers to Interrogatories of Neal Cox, Doc. 38-1.) Deputy Hazen, who maintained the Lincoln County Sheriff Office's sex offender registry, was acquainted with Mr. Latham as Mr. Latham was a registered sex offender. (Defendant Exhibit B, Answers to Interrogatories of Ben Hazen, Doc. 38-2.) Plaintiff informed Deputy Cox, Deputy Hazen, and Sergeant Minner that she was a victim of domestic violence at the hands of Mr. Latham. (Docs. 38-1 and 38-2.) Plaintiff reported that Mr. Latham was intoxicated as he had been drinking

4

whiskey and he was very unpredictable. (*Id*.) Plaintiff stated that Mr. Latham was a felon and he had served time in prison. (*Id*.) Plaintiff expressed concern about her safety and the safety of the officers. (*Id*.)

According to Deputy Cox and Deputy Hazen, Plaintiff stated that Mr. Latham said he was going to get a gun and he had access to guns at their home. (Docs. 38-1 and 38-2.) Plaintiff recalls that she did not tell the officers that Mr. Latham possessed guns but she did tell them that she owned guns at the home. (Doc. 49-1.) Plaintiff states that she did not tell the officers that Mr. Latham said he was going to get a gun. (*Id*.) Deputy Cox and Deputy Hazen observed that Ms. Latham had redness around her eye consistent with being struck in the face. (*Id*.)

After speaking with Plaintiff, Officer Kennedy, Deputy Cox, Deputy Hazen, and Sergeant Minner went to the Capitan Police Station to formulate a plan and review safety measures. (Docs. 38-1, 38-2, and 79-1.) Officer Kennedy, Deputy Cox, Deputy Hazen, and Sergeant Minner decided to go to the Latham home, which is located six miles east of Capitan on U.S. 380. (*Id*.) Officer Kennedy planned to talk to Mr. Latham about what had happened and ensure he was not a future danger to Plaintiff or others. (Doc. 75-1.) Officer Kennedy did not decide to arrest Mr. Latham at that time. (*Id*.)

When Officer Kennedy, Deputy Cox, Deputy Hazen, and Sergeant Minner[2] arrived at the Latham property, the lights were on inside the house. (Doc. 38-2.) As the officers approached the house, the lights went off. (*Id*.)

Deputy Hazen opened the gate and entered the yard. (Docs. 38-1 and 38-2.) The front of the house faces north and away from the road. (*Id*.) Officer Kennedy positioned himself on the east side of the house for back up and cover. (*Id*.) Deputy Cox and Sergeant Minner walked around the back of the house but a fence impeded their ability to secure the backdoor. (Doc. 75-2.) Deputy

---

[2] Plaintiff did not accompany the officers and she was not present during the events at issue. (Doc. 49-1.)

Cox and Sergeant Minner walked to the front of the house. (*Id.*) Deputy Hazen knocked on the front door and announced himself. (*Id.*) Deputy Hazen said, "Sheriff's Department" and "Police" several times. (*Id.*) Mr. Latham came out to the porch area of the house and said, "Go away" and "Get off my property" and "Who are you?" (Docs. 38-1 and 38-2.) Deputy Hazen identified himself as Ben Hazen and said, "You know me" and "You register with me." (*Id.*) Mr. Latham said, "I want you all out of here." (*Id.*)

Deputy Hazen instructed Mr. Latham to show his hands as the porch door obstructed Mr. Latham's hands. (Docs. 38-1 and 38-2.) Mr. Latham did not comply. (*Id.*) Deputy Hazen moved to get a better view and saw Mr. Latham was holding a handgun. (Doc. 38-2.) From his vantage point behind Deputy Hazen, Deputy Cox saw that Mr. Latham was holding a gun. (Doc. 38-1.) Deputy Hazen and the other officers began to retreat around the corner of the home. (*Id.*)

Mr. Latham said, "I'm coming out. I'm going to light you all up." (Doc. 38-2.) Deputy Hazen said, "I'm backing up, don't come out." (*Id.*) Mr. Latham turned on the porch light and exited the house, still holding the handgun. (*Id.*) Mr. Latham stated: "I'm coming out and bringing my gun with me." (Doc. 38-1.) Deputy Hazen instructed Mr. Latham to drop his weapon. (Doc. 38-2.) Mr. Latham did not drop the gun. (*Id.*) Mr. Latham turned toward Deputy Cox and Deputy Hazen, raised the gun and pointed it at them. (Docs. 38-1 and 38-2.) Deputy Cox and Deputy Hazen were about ten to twelve feet away from Mr. Latham. (Doc. 38-1.) Deputy Cox and Deputy Hazen fired their weapons and fatally shot Mr. Latham. (*Id.*) Mr. Latham was handcuffed and Sergeant Minner called an ambulance. (Docs. 38-1 and 38-2.) By the time the ambulance arrived, Mr. Latham was deceased. (*Id.*) Mr. Latham was neither arrested nor charged with a crime. (*Id.*)

In her affidavit, Plaintiff states that Mr. Latham would have been cautious because someone tried to steal gasoline from Plaintiff's car two weeks prior to the incident and "no

trespassing" signs were posted on the property. (Doc. 49-1.) Plaintiff states that Mr. Latham was hard of hearing, had diabetes, had not eaten all day, recently had back surgery, was on pain medication, and had difficulty seeing as he had poor eyesight and he was not wearing his glasses at the time of the shooting. (*Id.*) Plaintiff believes that the Latham's four dogs would have barked during the incident and Mr. Latham would not have been able to hear what the officers were saying. (*Id.*)

Plaintiff explained the layout of the exterior of the Latham residence in her affidavit and attached photographs. (Doc. 49-1, Pl. Exhibits 1-A through 1-J.) The Latham residence is located on the north side of the highway, the back of the residence faces the highway, "no trespassing" signs are posted on a window, and a fence runs between the highway and the house. (Doc. 49-1, Pl. Exhibits A and 1-A through 1-D; Doc. 20-1 Pl. Exhibit A and 1-A through 1-J (14-cv-0671).) The residence is accessible from a driveway on the east side of the house that runs from the highway into a parking area on the north side of the house. (Doc. 49-1, Pl. Exhibits 1-G and 1-H.) A fence with a "walkway gate" runs between the house and the parking area. (Doc. 49-1, Pl. Exhibits 1-I and 1-J.) The walkway gate provides "ingress and egress to the house" and leads to an entrance on the north side of the residence that Plaintiff and Mr. Latham "always" used. (Doc. 49-1, Pl. Exhibit 1-I.)

Plaintiff submitted the affidavit of her attorney and attached photographs produced by Defendants showing the outside of the residence after the shooting. (Doc. 49-3, Pl. Exhibits 3-A through 3-W; Doc. 20-3 Pl. Exhibit C, and C1-C26 (14-cv-0671).) The photographs show Mr. Latham's body lying outside the entrance on the north side of the house, blood splatters on walls, bullet holes in walls, the inside of the residence, a handgun, ammunition, sheriff's deputies, and bullet marks on metal. (Doc. 49-3, Pl. Exhibits 3-A through 3-W; Doc. 20-3 Pl. Exhibit C, and

C1-C26 (14-cv-0671).) The photographs indicate that Mr. Latham was shot immediately outside

the entrance on the north side of the residence. (Doc. 49-3, Pl. Exhibits 3-D through 3-F.)

Plaintiff submitted portions of the New Mexico State Police Incident Report. (Doc. 49-4,

Pl. Exhibits D through G and I through L; Doc. 20-4, Pl. Exhibits D through G and J through N

(14-cv-0671).) Defendants object to consideration of the police report because it contains hearsay

without any indicia of reliability and it is incomplete. (Doc. 56 at 2 and Doc. 28 at 3 (14-cv-0671).)

The Court finds it unnecessary to resolve Defendants' objections in light of the outcome of its

analysis. Moreover, the excerpts of the police report are materially consistent with the evidence

submitted by Defendants.

The portions of the police report submitted by Plaintiff show that New Mexico State Police

Agent Robert Diaz was assigned to assist with the officer-involved shooting investigation at 12:05

a.m. on July 29, 2011, and he arrived on the scene at approximately 1:20 a.m. (*Id.*) Notably, Agent

Diaz was not present during the incident. (*Id.*) The pages submitted by Plaintiff include excerpts of

narrative summaries of interviews with Officer Kennedy, Deputy Cox, and Deputy Hazen. (*Id.*)

Plaintiff also submitted answers to interrogatories from Deputy Cox and Deputy Hazen. (Doc.

49-4, Pl. Ex. H; Doc. 20-4, Pl. Exhibits H and I (14-cv-0671).) These documents are consistent

with the evidence submitted by Defendants.

Finally, Plaintiff relies on the expert report of Michael D. Lyman, Ph.D. (Plaintiff Exhibit

B, Doc. 49-2; Doc. 20-2 (14-cv-0671).) Plaintiff offers Dr. Lyman as an expert on the topic of

police procedures. (*Id.*) Dr. Lyman's opinions are based on his review of the documents provided

to him by Plaintiff's counsel as well as his education, independent research, and experience. (*Id.*)

Dr. Lyman opined that the defendant officers failed to obtain an arrest warrant or otherwise have

proper justification to enter the Latham property for the purpose of arresting Mr. Latham and this

failure resulted in the use of deadly force against Mr. Latham. (*Id.*) Dr. Lyman further opined that the defendant officers Cox and Hazen failed to properly identify themselves as law enforcement officers and they should have known that their approach to the Latham residence would result in the use of deadly force against Mr. Latham. (*Id.*)

IV.   **Discussion**

    A.   **Qualified immunity**

    1.   **Legal framework**

Defendants Cox, Hazen, and Kennedy have asserted the defense of qualified immunity. Government officials sued under § 1983 are entitled to qualified immunity unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct. *See Ashcroft v. al-Kidd*, 563 U.S. ___, 131 S.Ct. 2074, 2080 (2011). Qualified immunity protects government officials performing discretionary functions from individual liability under 42 U.S.C. § 1983 "'for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A right is clearly established only if its contours are sufficiently clear that "a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, (1987). In other words, "existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 131 S.Ct. at 2083. This doctrine "gives government officials breathing room to make reasonable but mistaken judgments," and "protects 'all but the plainly incompetent or those who knowingly violate the law.' " *Id.*, at 2085 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Once a defendant asserts the defense of qualified immunity, the plaintiff bears the burden of satisfying a "'strict two-part test.'" *McBeth v. Himes*, 598 F.3d 708, 716 (10th Cir. 2010) (*quoting Bowling v. Rector*, 584 F.3d 956, 964 (10th Cir. 2009)). This two-part test requires "the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Courtney v. Oklahoma ex rel., Dep't of Pub. Safety*, 722 F.3d 1216, 1222 (10th Cir. 2013). The district court maintains the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* (*quoting Pearson v. Callahan*, 555 U.S. at 236). "If the plaintiff fails to carry either part of his two-part burden, the defendant is entitled to qualified immunity." *Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995). In a qualified immunity context, the plaintiff has the burden of asserting facts which allege a constitutional claim.

Plaintiff alleges the following §1983 claims against the individual defendants: (1) excessive force in violation of the Fourth Amendment; (2) unlawful search and seizure and wrongful detention in violation of the Fourth Amendment; (3) violation of trial rights under the Sixth Amendment; and (4) violation of equal protection and due process rights under the Fifth Amendment and the Fourteenth Amendment. Defendants Cox, Hazen, and Kennedy are entitled to qualified immunity because Plaintiff has not presented facts that would show Defendant Cox, Hazen, or Kennedy violated a constitutional right.

### 2.    Excessive force

Plaintiff asserts that Defendants Cox, Hazen, and Kennedy used excessive force on Mr. Latham. "When a plaintiff alleges excessive force during an investigation or arrest, the federal right at issue is the Fourth Amendment right against unreasonable seizures." *Tolan v. Cotton*, 134

S.Ct. 1861, 1865 (2014) (*citing Graham v. Connor,* 490 U.S. 386, 394 (1989)). "The inquiry into whether this right was violated requires a balancing of "'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'" *Id.* (*citing Tennessee v. Garner*, 471 U.S. 1, 8 (1985) and *Graham*, 490 U.S. at 396). Moreover, because "'police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation,' the reasonableness of the officer's belief as to the appropriate level of force should be judged from that on-scene perspective." *Saucier v. Katz*, 533 U.S. 194, 205 (2001) (quoting *Graham*, 490 U.S. at 397). Use of the "20/20 vision of hindsight" is not permitted. *Id.* (internal quotations omitted).

Courts assess objective reasonableness based on "whether the totality of the circumstances justified the use of force," and "pay careful attention to the facts and circumstances of the particular case." *Sevier v. City of Lawrence*, 60 F.3d 695, 699 (10th Cir. 1995) (internal quote and alteration marks omitted). Furthermore, officers are not required to use alternative, less intrusive means if their conduct is objectively reasonable. *Medina v. Cram*, 252 F.3d 1124, 1133 (10th Cir. 2001). An officer using force in the course of a seizure of a citizen is entitled to qualified immunity unless the level of force violated clearly established Fourth Amendment law. *Estate of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1259 (10th Cir. 2008).

Where, as here, a particular use of force is considered deadly force[3], then an officer's use of that force is reasonable only "if a reasonable officer in Defendants' position would have had probable cause to believe that there was a *threat of serious physical harm to themselves* or to others." *Estate of Larsen*, 511 F.3d at 1260 (internal quotation marks omitted) (emphasis

_____

[3] Deadly force "create[s] a substantial risk of causing death or serious bodily harm." *Jiron v. City of Lakewood*, 392 F.3d 410, 415 n.2 (10th Cir. 2004) (internal quotation marks omitted).

supplied); *see Tennessee v. Garner*, 471 U.S. at 11("Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force."). The Tenth Circuit has stated that "[a]n officer's use of deadly force in self-defense is not constitutionally unreasonable." *Romero v. Bd. of Cnty. Comm'rs*, 60 F.3d 702, 703-04 (10th Cir. 1995) (holding that officer acted reasonably in shooting suspect coming at him with knife in attack position); *see also Wilson v. Meeks*, 52 F.3d 1547, 1554 (10th Cir. 1995), *abrogated on other grounds by Saucier*, 533 U.S. at 205 (holding that officer acted reasonably in shooting suspect who was pointing gun in officer's direction). Indeed, even "[i]f an officer reasonably, but mistakenly, believed that a suspect was likely to fight back . . . the officer would be justified in using more force than in fact was needed." *Estate of Larsen*, 511 F.3d at 1260 (quoting *Saucier*, 533 U.S. at 205.) "A reasonable officer need not await the glint of steel before taking self-protective action; by then, it is often too late to take safety precautions." *Id*. (citation and internal quotation marks omitted).

In assessing the degree of threat facing law enforcement officers, the Tenth Circuit considers a number of non-exclusive factors. *Estate of Larsen,* 511 F.3d at 1260. These include (1) whether the officers ordered the suspect to drop his weapon, and the suspect's compliance with police commands; (2) whether any hostile motions were made with the weapon towards the officers; (3) the distance separating the officers and the suspect; and (4) the manifest intentions of the suspect. *See, e.g., Walker v. City of Orem*, 451 F.3d 1139, 1159 (10th Cir. 2006); *Jiron v. City of Lakewood*, 392 F.3d 410, 414-15 (10th Cir. 2004); *Zuchel v. Spinharney*, 890 F.2d 273, 274 (10th Cir. 1989). Another important aspect of this inquiry is "whether the officers were in danger

at the precise moment that they used force." *Phillips v. James*, 422 F.3d 1075, 1083 (10th Cir. 2005) (internal quotation marks omitted). Furthermore, a reasonable but mistaken belief that the suspect is likely to fight back justifies using more force than is actually needed. *Estate of Larsen*, 511 F.3d at 1260. However, the ultimate inquiry is always whether, from the perspective of a reasonable officer on the scene, the totality of the circumstances justified the use of force. *See Sevier*, 60 F.3d at 699. "The precise question asked in an excessive force case is 'whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.' " *Thompson v. Salt Lake Cnty*, 584 F.3d 1304, 1313 (10th Cir. 2009) (*quoting Graham*, 490 U.S. at 397).

In this case, the facts taken in the light most favorable to Plaintiff establish that Deputy Hazen opened the walkway gate, entered the yard, and approached the entrance door of the house. Officer Kennedy positioned himself on the east side of the house for back up and cover. Deputy Cox and Sergeant Minner walked around the back of the house but a fence impeded their ability to secure the backdoor. Deputy Cox and Sergeant Minner walked to the front of the house. Deputy Hazen knocked on the entrance door and announced himself. Deputy Hazen said, "Sheriff's Department" and "Police" several times. Mr. Latham came out to the porch area of the house and said, "Go away" and "Get off my property" and "Who are you?" Deputy Hazen identified himself as Ben Hazen and said, "You know me" and "You register with me." Mr. Latham said, "I want you all out of here."

Deputy Hazen instructed Mr. Latham to show his hands as the screen door obstructed Mr. Latham's hands. Mr. Latham did not comply. Deputy Hazen moved to get a better view and saw Mr. Latham was holding a handgun. From his vantage point behind Deputy Hazen, Deputy Cox saw that Mr. Latham was holding a gun. Deputy Hazen and the other officers began to retreat

13

around the corner of the home.

Mr. Latham said, "I'm coming out. I'm going to light you all up." Deputy Hazen said, "I'm backing up, don't come out." Mr. Latham turned on the porch light and exited the house, still holding the handgun. Mr. Latham stated: "I'm coming out and bringing my gun with me." Deputy Hazen instructed Mr. Latham to drop his weapon. Mr. Latham did not drop the gun. Mr. Latham turned toward Deputy Cox and Deputy Hazen, raised the gun and pointed it at them. Deputy Cox and Deputy Hazen were about ten to twelve feet away from Mr. Latham. Deputy Cox and Deputy Hazen fired their weapons and shot Mr. Latham.

When considered in the totality of the circumstances, Deputy Cox and Deputy Hazen's use of deadly force was reasonable and justified given Mr. Latham's actions. Mr. Latham could have defused the situation by dropping the gun and talking to the officers in order to allow them to reasonably assess the situation. Mr. Latham's conduct gave Deputy Hazen and Deputy Cox probable cause to believe that they were being threatened with serious bodily harm. After Mr. Latham raised the gun and pointed it toward Deputy Cox and Deputy Hazen, these officers were justified in shooting Mr. Latham. Officer Kennedy did not shoot Mr. Latham and did not direct the deputies to shoot Mr. Latham. In light of the facts and circumstances confronting them, the actions of Defendants Cox, Hazen, and Kennedy were objectively reasonable.

In response to Defendants Cox, Hazen, and Kennedy's assertion of qualified immunity, Plaintiff offers her belief that Mr. Latham would have been cautious and Mr. Latham would have had difficulty hearing what the officers were saying. Plaintiff was six miles away in Capitan at the time of the shooting. Plaintiff's beliefs about what happened are immaterial as she was not present and has no firsthand knowledge as to what transpired. Plaintiff also relies on the expert opinions of Dr. Lyman, who opined that the actions of the officers were inconsistent with proper police

procedures. Plaintiff's submissions are immaterial to the relevant factors and insufficient to establish a constitutional violation and overcome qualified immunity.

Notably, the Tenth Circuit has held that expert testimony regarding law enforcement standards is both irrelevant and confusing on the ground that the violation of such standards is insufficient for liability under section 1983 for excessive force. *See Marquez v. City of Albuquerque*, 399 F.3d 1216, 1222 (10th Cir. 2005); *Carr v. Castle*, 337 F.3d 1221, 1230 (10th Cir. 2003); *Romero*, 60 F.3d at 705 (stating that "violations of state law and police procedure generally do not give rise to a 1983 claim" for excessive force); *Wilson*, 52 F.3d at 1554 (holding that "violation of a police department regulation is insufficient for liability under section 1983" for excessive force). This principle is based on the well-established Fourth Amendment law that holds the reasonableness of the officers' conduct must be assessed from the perspective of a reasonable officer on the scene who may be forced to make split-second judgments under stressful and dangerous conditions. *Walker*, 451 F.3d at 1159.

When evaluating a Fourth Amendment challenge to the conduct of police, the Tenth Circuit has stated that courts may not engage in "unrealistic second guessing of police officers' decisions." *United States v. Melendez-Garcia*, 28 F.3d 1046, 1052 (10th Cir. 1994). Consequently, the opinions of Dr. Lyman are immaterial and insufficient to satisfy Plaintiff's burden to show that Defendants violated a clearly established constitutional right with respect to her excessive force claims. Upon Defendants Cox, Hazen, and Kennedy's assertion of qualified immunity, Plaintiff was required to come forward with facts to establish a violation of a clearly established constitutional right. Plaintiff failed to satisfy her burden. As a result, Defendants Cox, Hazen, and Kennedy are entitled to qualified immunity as to the excessive force claim.

3.       **Unlawful search and seizure and wrongful detention**[4]

Plaintiff contends that Defendants Cox, Hazen, and Kennedy should have obtained a search warrant and an arrest warrant before going to the Latham residence because they did not witness Mr. Latham strike Plaintiff. This argument is legally unsupportable. The officers did not need a search warrant before going to the Latham residence because the officers had reasonable suspicion that Plaintiff had committed the crimes of battery against a household member and driving while intoxicated. Plaintiff reported that Mr. Latham struck her face during an argument. Defendants Cox, Hazen, and Kennedy observed redness and bruising around Plaintiff's eye consistent with being struck in the face. Plaintiff reported that Mr. Latham was intoxicated and he drove over six miles to their residence. The information supplied by Plaintiff indicated that Mr. Latham was intoxicated and he drove while intoxicated. Defendants Cox, Hazen, and Kennedy knew that Mr. Latham was a convicted felon as he had registered as a sex offender with Deputy Hazen. Plaintiff maintains that she told the officers that the guns belonged to her. This is a distinction without a difference and immaterial to the analysis as Mr. Latham had physical access to guns in the house he shared with Plaintiff. Based on these factors, Defendants Cox, Hazen, and Kennedy had reasonable suspicion that Defendant had committed the crimes of battery against a household member and driving while intoxicated. A reasonable law enforcement officer would surmise that the matter needed to be investigated further. Under these circumstances, Defendants Cox, Hazen, and Kennedy had reasonable suspicion to visit the Latham residence and investigate further.

Defendants Cox, Hazen, and Kennedy approached the Latham residence from the driveway and the walkway gate. Deputy Hazen knocked on the entrance door, which is the

---

[4] Plaintiff pled this claim in the First Amended Complaint in the second lawsuit. (Doc. 4 (14-cv-0671)). For this reason, Defendants' arguments that Plaintiff failed to plead this claim are moot.

principal means of accessing the house. The main access area of the house faces north and away from the road. The Supreme Court recently stated "[o]fficers are allowed to knock on a residence's door or otherwise approach the residence seeking to speak to the inhabitants just as any private citizen may." *Carroll v. Carman*, 135 S.Ct. 348, 351 (Nov. 1, 2014) (per curiam) (citation omitted). In situations "where the back door of a residence is readily accessible to the general public . . . the Fourth Amendment is not implicated when police officers approach that door in the reasonable belief that it is a principal means of access to the dwelling." *Id.*, 135 S.Ct. at 352.

In this case, the officers approached the entrance door of the Latham residence that was readily accessible from the driveway. (Doc. 49-1). Deputy Hazen opened the walkway gate and entered the yard. (Docs. 38-1 and 38-2.) The main access area of the house faces north and away from the road. (*Id.*) Officer Kennedy positioned himself in the driveway on the east side of the house for back up and cover. (*Id.*) Deputy Cox and Sergeant Minner attempted to walk around the west side of the house but the fence impeded their ability to secure the backdoor facing the highway. (Doc. 75-2.) Deputy Cox and Sergeant Minner proceeded to the driveway on the east side of the house and walked to the north side access area. (*Id.*)

Deputy Hazen knocked on the door that Plaintiff and Mr. Latham "always" used for "ingress and egress to the house" and announced that he was a law enforcement officer. (Docs. 38-1, 38-2 and 49-1.) Deputy Hazen said, "Sheriff's Department" and "Police" several times. (*Id.*) Mr. Latham came out to the porch area of the house and said, "Go away" and "Get off my property" and "Who are you?" (Docs. 38-1 and 38-2.) Deputy Hazen identified himself as Ben Hazen and said, "You know me" and "You register with me." (*Id.*) Mr. Latham said, "I want you all out of here." (*Id.*)

Deputy Hazen instructed Mr. Latham to show his hands as the screen door obstructed Mr.

17

Latham's hands. (Docs. 38-1 and 38-2.) Mr. Latham did not comply. (*Id*.) Deputy Hazen moved to get a better view and saw Mr. Latham was holding a handgun. (Doc. 38-2.) From his vantage point behind Deputy Hazen, Deputy Cox saw that Mr. Latham was holding a gun. (Doc. 38-1.) Deputy Hazen and the other officers began to retreat around the corner of the home. (*Id*.) Defendants Cox, Hazen, and Kennedy knew that Mr. Latham was a convicted felon and they saw he was holding a firearm. Undoubtedly, at this time, Defendants Cox, Hazen, and Kennedy had probable cause to arrest Mr. Latham for being a felon in possession of a firearm.

Mr. Latham said, "I'm coming out. I'm going to light you all up." (Doc. 38-2.) Deputy Hazen said, "I'm backing up, don't come out." (*Id*.) Mr. Latham turned on the porch light and exited the house, still holding the handgun. (*Id*.) Mr. Latham stated: "I'm coming out and bringing my gun with me." (Doc. 38-1.) Deputy Hazen instructed Mr. Latham to drop his weapon. (Doc. 38-2.) Mr. Latham did not drop the gun. (*Id*.) Mr. Latham turned toward Deputy Cox and Deputy Hazen, raised the gun and pointed it at them. (Docs. 38-1 and 38-2.) Deputy Cox and Deputy Hazen were about ten to twelve feet away from Mr. Latham. (Doc. 38-1.) Deputy Cox and Deputy Hazen fired their weapons and fatally shot Mr. Latham. (*Id*.)

Defendants Cox, Hazen, and Kennedy acted reasonably when they attempted to contact Mr. Latham at his home. Deputy Hazen knocked on the entrance door and the other officers acted reasonably in light of Mr. Latham's intoxication, recent domestic violence, criminal history, and access to firearms. It is well-established that officers are allowed to knock on a door or otherwise approach a residence seeking to speak to the inhabitants just as any private citizen may. *Carrol v. Carman*, 135 S.Ct. 348 (2014) (per curiam); *United States v. Shuck*, 713 F.3d 563, 567 (10th Cir. 2013). The Tenth Circuit has explained that "a 'knock and talk' is a consensual encounter and therefore does not contravene the Fourth Amendment, even absent reasonable suspicion." *United*

18

*States v. Cruz-Mendez*, 467 F.3d 1260, 1264 (10th Cir. 2006) (citing *United States v. Spence*, 397 F.3d 1280, 1283 (10th Cir. 2005)). Deputy Hazen knocked on the front door and Mr. Latham answered the door with a gun in his hand. By approaching the front door of the Latham house as he did, Deputy Hazen used the normal route of access, which would be used by anyone visiting the house. *United States v. McDowell*, 713 F.3d 571 (10th Cir. 2013) (holding that the police officers did not violate the Fourth Amendment by traversing the driveway and front sidewalk while conducting a "knock and talk"). There is no evidence that Defendants Cox, Hazen, or Kennedy entered the Latham home before the shooting. Deputy Hazen acted reasonably by knocking on the front door and the other officers acted reasonably in approaching the house to act as back up to Deputy Hazen.

Defendants Cox, Hazen, and Kennedy knew that Mr. Latham was a convicted felon. When they saw Mr. Latham with a gun in his hand, Defendants Cox, Hazen, and Kennedy had probable cause to arrest Mr. Latham for being a felon in possession of a firearm. After Mr. Latham raised the gun and pointed it toward Deputy Cox and Deputy Hazen, these officers were justified in shooting Mr. Latham as Mr. Latham presented a direct threat to their safety. Mr. Latham was not arrested because the shooting was fatal. After the shooting, exigent circumstances justified entry into the Latham residence. *See United States v. Martin*, 613 F.3d 1295, 1299 (10th Cir. 2010); *United States v. Reeves,* 524 F.3d 1161, 1169 (10th Cir. 2008); *United States v. Walker,* 474 F.3d 1249, 1252 (10th Cir. 2007).

Upon Defendants Cox, Hazen, and Kennedy's assertion of qualified immunity, Plaintiff was required to come forward with facts to establish a violation of a clearly established constitutional right. Defendants Cox, Hazen, and Kennedy did not need to obtain a search warrant or an arrest warrant before going to the Latham residence and contacting Mr. Latham. Plaintiff

failed to carry her burden to show that Defendants Cox, Hazen, and Kennedy violated a clearly established constitutional right with respect to the unlawful search and seizure claim. Accordingly, Defendants Cox, Hazen, and Kennedy are entitled to qualified immunity as to the unlawful search and seizure claim.

### 4. Trial rights under the Sixth Amendment

Plaintiff alleges that Defendants Cox, Hazen, and Kennedy violated Mr. Latham's Sixth Amendment rights to an impartial jury, to be informed of the nature and cause of the accusations against him, to be confronted with witnesses against him, to have compulsory process for obtaining witnesses, and have the assistance of counsel. (Doc. 4 (14-cv-0671).) The facts alleged by Plaintiff do not support a Sixth Amendment claim. "The Sixth Amendment protects criminal defendants during trial." *Voyticky v. Village of Timberlake*, 412 F.3d 669, 679 (6th Cir. 2005). In that Mr. Latham was not charged with a crime and did not go to trial, Plaintiff has neither alleged nor presented facts that would support a Sixth Amendment claim. As a result, Plaintiff has not shown a violation of a constitutional right. Therefore, Defendants Cox, Hazen, and Kennedy are entitled to qualified immunity as to Plaintiff's claim for denial of Mr. Latham's Sixth Amendment trial rights.

### 5. Equal protection and due process rights

Plaintiff alleges that Defendants Cox, Hazen, and Kennedy violated Mr. Latham's equal protection and due process rights under the Fifth Amendment and the Fourteenth Amendment. The Fifth Amendment claim is not cognizable because the due process clause of the Fifth Amendment applies only to actions of the federal government and no defendant in the instant action is alleged to be a federal government actor. *See Citizens for Health v. Leavitt*, 428 F.3d 167, 178 n.11 (3d Cir. 2005); U.S. Const. amend. V.

20

Moreover, Plaintiff has neither alleged nor presented facts that would support an equal protection claim. "The first element of an equal protection claim is that the plaintiff was 'intentionally treated differently from others similarly situated.' " *SECSYS, LLC v. Vigil*, 666 F.3d 678, 688 (10th Cir. 2012) (*quoting Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam)). "This element is especially important in class-of-one cases." *Jennings v. City of Stillwater*, 383 F.3d 1199, 1213 (10th Cir. 2004). Accordingly, "a plaintiff must first establish that others, 'similarly situated in every material respect' were treated differently." *See Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216 (10th Cir. 2011) (*quoting Jicarilla Apache Nation v. Rio Arriba Cnty.*, 440 F.3d 1202, 1210 (10th Cir. 2006)). As Plaintiff has failed to allege or present any facts that would satisfy this element, she has failed to state an equal protection claim and failed to show a violation of a constitutional right.

Similarly, Plaintiff's due process claim is not viable. The Supreme Court has held that: "When a plaintiff alleges excessive force during an investigation or arrest, the federal right at issue is the Fourth Amendment right against unreasonable seizures." *Tolan v. Cotton*, 134 S.Ct. at 1865. "Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Graham v. Connor*, 490 U.S. at 394. Therefore, binding Supreme Court authority precludes Plaintiff's due process claim. In that Plaintiff has not shown a violation of a constitutional right, Defendants Cox, Hazen, and Kennedy are entitled to qualified immunity as to Plaintiff's equal protection and due process claims.

**6.     The individual defendants are entitled to qualified immunity**

Qualified immunity "shields government officials performing discretionary functions from

21

liability if their conduct does not violate clearly established rights of which a reasonable government official would have known." *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006) (quotation omitted). Once a qualified immunity defense has been asserted, the plaintiff has "the burden of showing both that a constitutional violation occurred and that the constitutional right was clearly established at the time of the alleged violation." *Williams v. Berney*, 519 F.3d 1216, 1220 (10th Cir. 2008). As previously discussed, Plaintiff has produced no evidence that Defendants Cox, Hazen, or Kennedy committed a violation of clearly established federal constitutional or statutory law. In that Plaintiff has failed to meet her burden to overcome the assertion of qualified immunity, Defendants Cox, Hazen, or Kennedy are entitled to qualified immunity on Plaintiff's §1983 claims.

**C.      Municipal liability**

Plaintiff asserts that Lincoln County, the Lincoln County Sheriff's Department,[5] and the Village of Capitan are liable because their policies and customs and failure to adequately train and supervise the officers caused Mr. Latham's death. "A plaintiff suing a municipality under section 1983 for the acts of one of its employees must prove: (1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation." *Myers v. Okla. Cnty. Bd. of Cnty. Comm'rs*, 151 F.3d 1313, 1318 (10th Cir. 1998) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). Notably, a municipality may not be held liable where there was no underlying constitutional violation by its officers. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993). Because Plaintiff did not establish that the officers violated Mr. Latham's constitutional rights, she cannot satisfy the first prong of the test, which precludes

---

[5]  Plaintiff acknowledges that the County of Lincoln and the Lincoln County Sheriff's Department are improper parties and requests leave to amend to name the proper party. (Doc. 49 at 23.) Given the absence of a viable claim, the Court does not reach this issue.

finding the governmental entities liable. *See Hinton*, 997 F.2d at 782 (reasoning that municipality could "not be held liable where there was no underlying constitutional violation by any of its officers").

Additionally, even if a constitutional violation had been established, which it has not, municipal governments incur liability under § 1983 only when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690. A "single isolated incident" does not prove the existence of an unconstitutional policy or custom. *City of Okla. City v. Tuttle*, 471 U.S. 808, 821 (1985). Plaintiff's assertions do not establish the existence of any offending policy that would have been a moving force behind any constitutional violation.

Moreover, Plaintiff has not established municipal liability based on lack of adequate training. Inadequacy of training may serve as the basis for municipal liability where the failure to train amounts to deliberate indifference to the rights of persons with whom the municipal employee may come into contact. *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989). "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a 'policy or custom' that is actionable under § 1983." *Id.* at 389; *see also Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998) (stating "the failure to train must reflect a deliberate or conscious choice by a municipality." (quotations and citations omitted)). Plaintiff has presented no evidence that the government entities improperly trained the officers. Accordingly, Lincoln County, the Lincoln County Sheriff's Department, and the Village of Capitan are not liable under Section 1983.

**D.      The New Mexico Tort Claims Act**

The New Mexico Tort Claims Act preserves sovereign immunity against tort claims for state governmental entities and public employees acting in the scope of their duties, except as specifically waived. *See* N.M. Stat. Ann. § 41-4-4(A). The Act waives sovereign immunity for tort claims involving the conduct of a "law enforcement officer." N.M. Stat. Ann. § 41-4-12. This provision states:

> The immunity granted pursuant to [Section 41-4-1(A)] does not apply to liability for personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties.

N.M. Stat. Ann. § 41-4-12.

The waiver of immunity provided by Section 41-4-12 applies only if the plaintiff specifically alleges one of the enumerated torts listed in the statute. *See Lessen v. City of Albuquerque*, 187 P.3d 179, 186 (N.M. Ct. App. 2008). Section 41-4-12 does not apply to negligence claims unless the law enforcement officer's negligence is alleged to have caused a third party to commit one of the specified intentional torts. *Id*., at 187. Plaintiff does not claim that the Defendants' negligence caused a third party to commit any intentional tort. To the extent Plaintiff asserts claims for assault and battery, such claims presuppose the shooting was not justified. *See Dickson v. City of Clovis*, 242 P.3d 398, 404 (N.M. Ct. App. 2010). As established above, the actions of the officers were reasonable given the circumstances. *See Santillo v. N.M. Dept. of Publ. Safety*, 173 P.3d 6, 11 (N.M. Ct. App. 2007). In that Defendants Cox, Hazen, or Kennedy acted reasonably and the shooting was justified, Section 41-4-12 is inapplicable and Plaintiff's state-law claims are barred by the New Mexico Tort Claims Act.

**E.      The New Mexico Family Violence Protection Act**

Defendants contend that Plaintiff's state-law claims are barred by the New Mexico Family Violence Protection Act. Plaintiff did not respond to this argument. The New Mexico Family Violence Protection Act provides in pertinent part that: "Any law enforcement officer responding to the request for assistance under the Family Violence Protection Act is immune from civil liability to the extent allowed by law." N.M. Stat. Ann. § 40-13-7(D). In that Defendants Cox, Hazen, and Kennedy responded to a request for assistance from a victim of domestic abuse, the officers are immune from Plaintiff's state-law claims under the New Mexico Family Violence Protection Act.

**V.      Conclusion**

Defendants Cox, Hazen, and Kennedy are entitled to qualified immunity on Plaintiff's §1983 claims because Plaintiff did not establish that they violated any clearly established right of which a reasonable law enforcement officer would have known. Defendants Cox, Hazen, and Kennedy acted reasonably given the circumstances and they did not violate Mr. Latham's rights under the Fourth Amendment. Plaintiff failed to plead or present facts that would support a claim for violation of the Fifth, Sixth, or Fourteenth Amendments. Plaintiff failed to establish a constitutional violation that would give rise to municipal liability and she has not established municipal liability based on inadequate training. The state-law claims are barred by the New Mexico Tort Claims Act and the New Mexico Family Violence Protection Act.

**THEREFORE,**

**IT IS ORDERED** that Defendants' Motion for Summary Judgment on the Basis of Qualified Immunity and Other Grounds and Motion to Dismiss Plaintiff's First Amended

Complaint and/or Motion for Summary Judgment and for Qualified Immunity (Docs. 38 and 75)

are **GRANTED.**

   **IT IS FURTHER ORDERED** that a judgment in favor of Defendants will issue.


         _____
         **ROBERT C. BRACK**
         **UNITED STATES DISTRICT JUDGE**